# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| CAE AGUILERA, | ) |
| Plaintiff, | ) |
| | ) No.: 4:15-CV-73-SKL |
| v. | ) |
| OFFICER SHARP, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is a pro se prisoner's civil rights action under 42 U.S.C. § 1983. Now before the Court are Defendant Officer Mike Sharp's ("Defendant Sharp's") motion for extension of time to complete discovery [Doc. 46], emergency motion for extension [Doc. 47], and motion for summary judgment with supporting memorandum [Docs. 48 & 49]. Also before the Court are Plaintiff Cae Aguilera's ("Plaintiff's") response to the motion for summary judgment which is combined with a motion to appoint counsel, a motion for extension of time to complete discovery, and a motion to compel [Doc. 52], as well as another motion to compel [Doc. 53]. The Court will address these motions in turn.

### I. MOTIONS FOR EXTENSION OF DISCOVERY DEADLINE AND TO COMPEL DISCOVERY

Both Plaintiff and Defendant Sharp have filed motions seeking extension of the deadline to complete discovery in this matter. In the first scheduling order the Court entered in this case on June 9, 2017, the discovery deadline was March 20, 2018 [Doc. 24 p. 1]. On March 6, 2018, the Court *sua sponte* entered an amended scheduling order that moved the discovery deadline to June 19, 2018 [Doc. 40 p. 1].

On June 15, 2018, four days before the discovery deadline in the amended scheduling order was scheduled to pass, Defendant Sharp filed a motion seeking to extend this deadline [Doc. 46]. In this motion, Defendant Sharp notes he planned to file a motion for summary judgment based on qualified immunity and, if this motion was granted, he would not have to depose Plaintiff and incur the associated costs and expenses [Doc. 46 p. 1-2]. If summary judgment is not granted, Defendant Sharp asks the Court to allow him to wait to depose Plaintiff until after the Court has ruled on the dispositive motions [*id.*]. As the Court grants Defendant Sharp's motion for summary judgment in this memorandum and order, Defendant Sharp's motion to extend the discovery deadline [Doc. 46] will be **DENIED as moot**.[1]

Plaintiff also seeks extension of the discovery deadline based on his assertion that Defendant Sharp and his counsel have not provided Plaintiff with a video recording of the October 2, 2015, incident (discussed below), and the fact that the Court denied Plaintiff's motion to file additional discovery requests because the Court could not determine whether such requests were necessary and/or proper [Doc. 52 p. 1-2]. In support thereof, Plaintiff filed a second motion to compel discovery (that is identical to his first) to which he attached his second set of discovery requests [Doc. 53]. Again, however, Plaintiff did not attach his first set of discovery requests and/or the responses to his first or second set of discovery requests so the Court could determine

---

[1] Although it is important to resolve qualified immunity issues as early as possible because this doctrine was created to ensure that insubstantial claims against officials may be resolved before discovery, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted), the Court notes Defendant Sharp was served with this action on January 9, 2017 [Doc. 11]. Thus, he could have filed a dispositive motion based on qualified immunity prior to engaging in discovery and taking Plaintiff's deposition and still complied with the Court's amended scheduling order. As such, Defendant Sharp's decision not to do so, but rather to wait until four days before the discovery deadline passed to seek extension thereof, would not be god cause for the Court to amend its scheduling order.

2

whether any valid basis exists for allowing additional discovery or compelling Defendant Sharp to provide further responses pursuant to Rules 26, 33, or 37 of the Federal Rules of Civil Procedure.

More importantly, Defendant Sharp filed a copy of his response to Plaintiff's second set of requests for production of documents [Doc. 55-1 p. 3-7]. In response to Plaintiff's request for a video recording of the incident on October 2, 2015, Defendant Sharp responds that "no such recordings exist." [*Id*. at 3]. The Court cannot compel Defendant Sharp to produce something that does not exist, and extending the discovering deadline will not help Plaintiff in this regard.

Accordingly, Plaintiff's motion for extension of time to complete discovery and motion to compel [Docs. 52 and 53] will be **DENIED** to the extent they seek extension of the discovery deadline and to compel Defendant Sharp to respond to Plaintiff's second set of discovery requests.

## II. MOTION FOR EXTENSION OF DISPOSITIVE MOTION DEADLINE

Defendant Sharp also filed an emergency motion for extension of the dispositive deadline on the grounds that his counsel suffered an unforeseeable medical event that would prevent him from filing a timely dispositive motion [Doc. 47]. While this motion demonstrates good cause and Plaintiff filed no opposition thereto, Defendant Sharp filed a timely motion for summary judgment with a supporting memorandum on July 3, 2018 [Docs. 48 & 49; Doc. 40 p. 1 (scheduling order)]. As such, this motion for extension of the dispositive motion deadline [Doc. 47] will be **DENIED as moot**.

## III. REQUEST FOR COUNSEL

Plaintiff also again requests appointment of counsel in this case [Doc. 52 p. 2-3]. The Court has previously denied Plaintiff's requests for counsel [Doc. 7 p. 1-2, Doc. 41 p. 1] and Plaintiff provides no reason for the Court to alter or amend these rulings. Thus, Plaintiff's request

for counsel is not well-taken and his motion [Doc. 52] is **DENIED** to the extent that it seeks appointment of counsel.

## IV. MOTION FOR SUMMARY JUDGMENT

Defendant Sharp also filed a motion for summary judgment with supporting memorandum[2] [Docs. 48 & 49] and Plaintiff filed a response [Doc. 52]. In his response, Plaintiff states he does not dispute Defendant Sharp's version of the incident on September 24, 2015, because he "cannot possibly prove what Defendant claims in that part." [*Id.* at 2]. The Court construes Plaintiff's response as a request to dismiss his excessive force claim arising out of the incident on September 24, 2015, which will be **GRANTED**. Also, for the reasons set forth below, Defendant's motion for summary judgment as to Plaintiff's claim for excessive force arising out of the incident on October 2, 2015, will be **GRANTED**.

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000) (citation omitted); *see also Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (quoting *Mazur v. Young*, 507, F.3d 1013, 1016 (6th Cir. 2007) ("Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.").

---

[2] Defendant Sharp also filed a separate statement of material facts [Doc. 50].

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979) (citations omitted). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *McLean*, 224 F.3d at 800 (citation omitted). The non-moving party also "may not rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (quotation marks and citation omitted). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Id.* at 249; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 249.

**B. Factual Background**

Plaintiff alleges Defendant Sharp used excessive force against him on October 2, 2015. Specifically, he claims he was in line to receive breakfast, and Defendant Sharp handed him a food tray without a spoon. Plaintiff asked Defendant Sharp how he was supposed to eat his breakfast and Defendant Sharp responded that he did not know, as there were no more spoons [Doc. 1 p. 7].[3] According to Plaintiff's complaint, Plaintiff repeated the question, and Defendant Sharp "respond[ed] by throwing the tray in his hand at me, which ended up hitting me directly on my head and face." [*Id.*]. Another inmate then threw a tray at Defendant Sharp, and Plaintiff also attempted to throw another tray, but Plaintiff was tackled by the other corrections officer serving

---

[3] Plaintiff's response to the motion for summary judgment [Doc. 52] is unsworn and therefore cannot be considered for summary judgment purposes, although the Court has reviewed it. *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) (citations omitted). As Plaintiff signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746, however, his complaint carries the same weight as an affidavit for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citations omitted).

5

breakfast. After this incident, Plaintiff asked if he could see medical and for a shower because he claimed gravy was burning his neck. His request was denied and he was escorted back to his cell [*Id.*].

In his motion for summary judgment, Defendant Sharp disputes Plaintiff's version of the events on October 2, 2015, and offers additional facts which Plaintiff does not dispute. In support, Defendant Sharp filed his own affidavit [Doc. 49-1]; the affidavit of Sergeant Floyd Rowell ("Officer Rowell"), who is the other officer that served breakfast on October 2, 2015 [Doc. 49-2]; and the jail incident report [Doc. 49-4 p. 10]. The sworn affidavits state that, just prior to Plaintiff's encounter, the officers had announced the kitchen was out of spoons. An "angry" inmate then approached the officers and "knocked trays off of the food cart" which caused food to spill onto the officers [Doc. 49-1 p. 2; Doc. 49-2 p. 1]. As stated above, it is undisputed that Plaintiff then approached the officers and repeatedly questioned Defendant Sharp about how Plaintiff should eat without a spoon. Not surprisingly, Defendant Sharp was unable to provide a satisfactory answer to this provocative, rhetorical question, so Plaintiff "angrily shoved more trays off of the food cart" toward Defendant Sharp[4] [Doc. 49-1 p. 3; Doc. 49-2 p. 2]. Plaintiff does not dispute that another inmate had already angrily knocked food trays off the food cart or that he (Plaintiff) angrily shoved even more food trays at Defendant Sharp before Defendant Sharp took any action other than attempting to answer Plaintiff's confrontational questions. The Court emphasizes these facts to give some context—a budding, angry, jailhouse food fight—to Defendant Sharp's actions.

Defendant Sharp claims he never threw a tray at Plaintiff, but rather "instinctively reacted by pushing the trays away from me which caused them to accidentally spill food" on Plaintiff [Doc. 49-1 p. 3]. Then, as Plaintiff acknowledges, another inmate joined in and starting throwing

---

[4] The Court notes that in his unsworn response [Doc. 52 p. 1], Plaintiff admits that he and Defendant Sharp "argued up til [sic] I shoved trays off the cart due to anger . . ."

6

food trays at the officers along with Plaintiff, but Plaintiff was tackled by Officer Rowell, and soon backup officers arrived and restored order [Doc. 49-1 p. 3; *see also* Doc. 1 at p. 5].

Defendant Sharp acknowledges the Court's obligation to construe the evidence in the light most favorable to the Plaintiff, but emphasizes that the Court "need draw only *reasonable* inferences in favor of the nonmoving party; it need not construe the record in such a manner that is wholly unsupportable—in the view of any reasonable jury." [Doc. 49 p. 4-5 (quoting *Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007) (quotation marks and citation omitted))]. He further argues that, even if the Court accepts Plaintiff's version of the events as true, Plaintiff's claim fails because he alleges only a *de minimis* use of force[5] [Doc. 49 p. 20-22].

**C. Analysis**

The Court must first determine what standard to apply to Plaintiff's excessive force claim. *See Burgess*, 735 F.3d at 472 (citations omitted) ("Excessive force claims . . . can be raised under the Fourth, Eighth, and Fourteenth Amendments. Which amendment should be applied depends on . . . whether [at the time of the incident,] the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two."). Plaintiff claims in his complaint that he was a "pretrial detainee" at the time of the relevant incident [Doc. 1 p. 1]. Defendant Sharp presented clear proof, however, Plaintiff was actually a convicted prisoner. Attached to Defendant Sharp's memorandum in support of his motion for summary judgment is an order entered January 7, 2015, in the Coffee County Circuit Court that finds Plaintiff violated his probation and sentences him to 11 months in the Coffee County Jail [Doc. 49-4 p. 36-37]. Plaintiff's unsworn response [Doc. 52] includes no

---

[5] Defendant Sharp also briefly argues he is entitled to qualified immunity [Doc. 49 p. 20-21]. As explained below, the Court concludes Plaintiff has not alleged facts sufficient to support a finding that the Eighth Amendment was violated. Accordingly, the Court need not address the qualified immunity question, although the Court notes that the lack of sufficient allegations giving rise to violation of a constitutional right means Defendant Sharp would be entitled to qualified immunity. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citations omitted).

proof or argument to support his claim that he was only a pretrial detainee. As the relevant incident took place on October 2, 2015, well within the 11-month sentence, it is clear Plaintiff was a convicted prisoner. Accordingly, the Court examines his excessive force claim under the Cruel and Unusual Clause of the Eighth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *see also Burgess*, 735 F.3d at 472 (citations omitted).

The Eighth Amendment proscribes "the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted). Prisoners must satisfy an objective component as well as a subjective one. *Id.* (citation omitted). The subjective component focuses on the mental state of the official involved, and the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Courts should consider the extent of the injury to the prisoner, the need for application of force, the relationship between the need for force and the amount of force used, the threat as perceived by reasonable officers, and efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (citations omitted). The "extent of injury may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 40 (2010) (but further noting that "[i]njury and force . . . are only imperfectly correlated" and that the more important consideration is whether "the nature of the force" was "nontrivial" and "applied in a malicious and sadistic manner to cause harm" (citations omitted)).

The objective component "requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). It is a "contextual inquiry that is responsive to contemporary standards of decency." *Id.* (quoting *Hudson*, 503 U.S.

8

at 8-9) (quotation marks omitted). As with the subjective inquiry, the extent of the injury sustained by the prisoner is not dispositive, though it "may help determine the amount of force used by the prison official." *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37). "Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action." *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (citation omitted).

Thus, while "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim," a prisoner "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 34, 37-38 (reversing a district court's decision to *sua sponte* dismiss an Eighth Amendment claim because the plaintiff's injuries were *de minimis*, finding the dismissal was "at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury," but noting the "absence of serious injury" is not irrelevant and can provide "some indication of the amount of force applied").

The Court finds as a matter of law Plaintiff has failed to satisfy either the subjective or the objective component of an Eighth Amendment excessive force violation. Viewing the evidence concerning the October 2, 2015, incident in the light most favorable to Plaintiff, Defendant Sharp threw a food tray in Plaintiff's direction, which "ended up" hitting Plaintiff and causing gravy to land on his neck. Plaintiff's sole injury due to this incident was the feeling that the gravy was burning him. As described above, it is apparent Plaintiff was challenging Defendant Sharp regarding the lack of spoons, and another inmate had already knocked trays off the food cart when Plaintiff shoved more trays toward Defendant Sharp. A problematic situation was developing, and Plaintiff's hostility to Defendant Sharp had just escalated from verbal to physical when Defendant Sharp reacted by throwing a tray at Plaintiff. It is apparent from Plaintiff's lack of injury that

9

Defendant Sharp did not use significant force in throwing the tray, which shows that Defendant Sharp's action, while intentional, was the result of a defensive instinct, and therefore not "malicious[] and sadistic[]," nor "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). If a "push or shove" is at the lowest end of the force spectrum and "gratuitous beating" is firmly in the "excessive" range, throwing a food tray at an inmate falls somewhere in between. And under the circumstances of this case, the Court finds it much more akin to a push or shove, especially given the growing unrest in the breakfast area, Plaintiff's escalating hostility toward Defendant Sharp, and Plaintiff's lack of injury. *See, e.g., Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008) ("karate chop" to the neck that did not cause injury was *de minimus* use of force); *Gordon v. Joyner*, No. 3:08CV-P667-H, 2010 WL 3001967, at *6 (W.D. Ky. July 28, 2010) (Granting summary judgment to prison official where the official punched a prisoner in the chest while the prisoner was in handcuffs but the prisoner had no proof of injury, and finding: "While the fact that Plaintiff's alleged injuries were only *de minimus* is not conclusive to defeat his excessive-force claim, the Court finds that it demonstrates [the prison official] did not act 'maliciously and sadistically to cause harm.'" (quoting *Hudson*, 5 U.S. at 6-7)); *see also Tuttle v. Carroll Cty. Det. Ctr.*, 500 F. App'x 480, 482, No. 10-5693, 2012 WL 4215747, at *1-*2 (6th Cir. Sept. 21, 2012) (finding that "[t]he extent of a prisoner's injury may . . . provide some indication of the amount of force applied," and further finding allegation that prison deputy "grabbed my privates and squeezed them really hard" was insufficient to state an Eighth Amendment claim (citing *Wilkins*, 559 U.S. at 37)).

Accordingly, Defendant Sharp's motion for summary judgment [Doc. 48] as to the October 2, 2015, incident will be **GRANTED**.

## V. CONCLUSION

For the reasons set forth above:

1. Defendant Sharp's motion to extend the discovery deadline [Doc. 46] will be **DENIED as moot**;

2. Plaintiff's motion for extension of time to complete discovery and motion to compel [Docs. 52 and 53] will be **DENIED** to the extent they seek extension of the discovery deadline in this case and to compel Defendant Sharp to respond to Plaintiff's second set of discovery requests;

3. Defendant Sharp's emergency motion for extension of the dispositive deadline [Doc. 47] will be **DENIED as moot**;

4. Plaintiff's request for counsel is not well-taken and his motion [Doc. 52] will be **DENIED** to the extent that it seeks appointment of counsel;

5. The Court construes Plaintiff's response to Defendant Sharp's motion for summary judgment [Doc. 52] as a request to dismiss his excessive force claim arising out of the incident on September 24, 2015, which will be **GRANTED**;

6. Defendant Sharp's motion for summary judgment [Doc. 48] as to the incident on October 2, 2015, will be **GRANTED**; and

7. This action will be **DISMISSED**.

The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

E N T E R :

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE